WETHERELL, J.
Appellant, Patricia Mouliom, seeks review of the final administrative order continuing her involuntary inpatient placement under the Baker Act.[1] The order was entered after a hearing at which Ms. Mouliom was not present. Ms. Mouliom contends that conducting the hearing in her absence amounts to fundamental error. We agree and reverse.
In June 2013, the administrator at the Northeast Florida State Hospital filed a petition pursuant to section 394.467(7), Florida Statutes, to continue Ms. Moul-iom’s involuntary inpatient placement at the facility. A hearing was held on the *981 petition by an administrative law judge (ALJ) on July 11, 2018. Ms. Mouliom was not present at hearing, but she was represented by an assistant public defender as required by section 394.467(7)(c). At the outset of the hearing, the following colloquy occurred:
THE COURT: Alright, [hospital employee], did you speak to Patricia Moul-iom this morning?
[HOSPITAL EMPLOYEE]: Yes sir.
THE COURT: And was she aware of today’s hearing?
[HOSPITAL EMPLOYEE]: Yes sir.
THE COURT: And what was her response to being asked to come?
[HOSPITAL EMPLOYEE]: She wasn’t coming.
THE COURT: OK. Was she prevented physically, in any way, from appearing?
[HOSPITAL EMPLOYEE]: No sir.
THE COURT: Alright.
[MS. MOULIOM’S COUNSEL]: I would waive her presence, your honor.
THE COURT: Alright.
The ALJ, apparently satisfied with the explanation of Ms. Mouliom’s absence from the hearing and her counsel’s waiver of her appearance, proceeded to conduct the hearing on the merits of the petition. The ALJ heard testimony from a doctor at the facility and from Ms. Mouliom’s mother. The doctor testified that Ms. Mouliom continues to meet the criteria for involuntary inpatient placement because is she grossly psychotic, has poor self-care, and is aggressive. Ms. Mouliom’s mother testified about her concerns regarding Ms. Moul-iom’s treatment at the facility. After the hearing, the ALJ entered an order continuing Ms. Mouliom’s involuntary inpatient placement at the facility for another six months, until January 11, 2014. This appeal followed.
Even though Ms. Mouliom’s attorney affirmatively waived her presence at the hearing, we are not precluded from considering the issue raised in this appeal because “a denial of the due process right to be present at an involuntary commitment hearing is fundamental error which may be raised on appeal even if not preserved below.” Register v. State, 946 So.2d 50, 50-51 (Fla. 1st DCA 2006). We review this issue under the de novo standard of review. See Croom v. State, 36 So.3d 707, 709 (Fla. 1st DCA 2010) (“This Court reviews a defendant’s unpreserved claim that a trial court committed fundamental error de novo.”).
. [2] This court has held that “[a] patient has a fundamental [due process] right to be present at a commitment proceeding.” Brown v. State, 953 So.2d 688, 688 (Fla. 1st DCA 2007) (citing Register, supra). This right was recognized in the context of an initial commitment hearing held by the circuit court under section 394.467(6), but the right is not limited to such hearings. The patient also has a fundamental right to be present at the periodic hearings held by an ALJ under section 394.467(7) to consider whether to continue the patient’s commitment.
The patient can waive the right to be present at the hearing, but for such a waiver to be valid, the ALJ “must certify through proper inquiry that the waiver is knowing, intelligent, and voluntary.” Register, 946 So.2d at 50. Here, the ALJ conducted an inquiry, and the issue we must determine is whether the inquiry was sufficient to allow the ALJ to find that Ms. Mouliom knowingly, intelligently, and voluntarily waived her right to be present at the hearing. Ms. Mouliom contends that the inquiry in this case was not sufficient. We agree.
The colloquy quoted above reflects that Ms. Mouliom was made aware of the hear *982 ing and that she voluntarily chose not to attend. However, there is no indication in the colloquy that Ms. Mouliom knew of her right to be present at the hearing or the purpose of the hearing. Without such knowledge, Ms. Mouliom could not have knowingly and intelligently waived her right to be present. See Johnson v. State, 750 So.2d 22, 28 (Fla.1999) (holding that the defendant did not waive his right to be present during a critical stage of the proceedings where the trial court made no inquiry as to the defendant’s understanding of his right to be present); Turner v. State, 530 So.2d 45, 49 (Fla.1988) (“A defendant cannot knowingly and intelligently waive a right of which he is unaware.”); and cf. State v. Williams, 731 So.2d 635, 636-37 (Fla.1999) (holding that a defendant waived his right to be present during jury selection where defense counsel stated that he discussed the right to be present with the defendant and the defendant waived the right).
Additionally, the ALJ did not make any inquiry into Ms. Mouliom’s mental state on the morning of the hearing and whether she had the ability to comprehend the right that she was waiving. This is significant because proceedings under section 394.467(7) necessarily involve patients with mental health issues, and without some indication that Ms. Mouliom had the ability to comprehend the right that she was waiving, the ALJ could not determine that the waiver was knowingly and intelligently made.[2]
We are mindful that proceedings under section 394.467(7) are typically brief and do not involve all of the formalities of a criminal trial. However, the liberty interests at stake in the proceeding are no less important. Accordingly, when the patient is not present at the hearing, it is imperative that the ALJ conduct an adequate inquiry of the facility staff or the patient’s counsel to determine whether the patient knowingly, intelligently, and voluntarily waived his or her presence. At a minimum, the inquiry must ensure that the patient received notice of the hearing; that no one prevented the patient from attending the hearing; that the patient was aware of his or her right to be present at the hearing and of the nature and purpose of the hearing; and that the patient’s mental state was such that he or she could comprehend the right being waived. Such an inquiry is necessary even if, as here, the patient’s presence is waived by his or her counsel, see Register, 946 So.2d at 50-51, and upon conclusion of the inquiry, the ALJ should make an explicit finding on the record as to whether the patient knowingly, intelligently, and voluntarily waived his or her presence at the hearing.
In sum, because the record does not contain sufficient evidence to support the ALJ’s implicit finding that Ms. Mouliom knowingly, intelligently, and voluntarily waived her right to be present at the commitment hearing, we reverse the order on appeal and remand for further proceedings consistent with this opinion, if necessary.[3]
REVERSED and REMANDED.
CLARK and RAY, JJ., concur.

. Ch. 394, pt. I, Fla. Stat. (2012).

. We note that this would not necessarily preclude the ALJ from conducting the proceeding without the patient because section 394.467(7)(b) authorizes the ALJ to waive the patient's presence at the hearing if the patient’s attorney does not object and the ALJ "finds that attendance at the hearing is not consistent with the best interests of the patient.” However, no such finding was made in this case.

. Ms. Mouliom sought a "remand for a new hearing on continued involuntary placement." *983 However, because this case was not expedited, the term of the commitment authorized by the order on appeal will likely have expired by the time this opinion becomes final and the mandate issues. That does not render this case moot, see Godwin v. State, 593 So.2d 211 (Fla. 1992), but a new hearing will obviously be unnecessary if Ms. Mouliom has been released. Likewise, if Ms. Mouliom's commitment has been continued based upon a subsequent petition, there is no need to hold a new hearing on the June 2013 petition if Ms. Mouliom was present at the hearing on the subsequent petition or her presence was validly waived.